Dora Burka v. Commissioner. Harry L. Burka v. Commissioner. Samuel Burka v. Commissioner.
Burka v. Commissioner
Docket Nos. 18020, 18021, 18022.
United States Tax Court
1949 Tax Ct. Memo LEXIS 154; 8 T.C.M. (CCH) 579; T.C.M. (RIA) 49148; June 15, 1949
*154 Bert B. Rand, Esq., and Nathan Wechsler, Esq., Victor Bldg., Washington, D.C., for the petitioners. Paul E. Waring, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: These proceedings were brought for redeterminations of deficiencies in income tax for 1944, as follows: Docket No.
Name
Amount
18020
Dora Burka
$2,089.14
18021
Harry L. Burka
2,246.27
18022
Samuel Burka
2,089.15
The sole question is whether the distributable 1944 net income of a partnership, comprised of the three petitioners, should be increased by $12,508.93, said to represent unrecorded expenses. Findings of Fact Petitioners are all residents of Washington, D.C., and in the taxable year 1944 were equal partners in a business operating under the name of Blue Banner Laundry. The Federal income tax returns for 1944 were filed with the collector of internal revenue for the district of Maryland. The 1944 return for the partnership consisted of a "Profit & Loss Statement" for the period as follows: Sales
$147,902.25
Less: Cost of Production
Supplies
$20,783.19
Labor
62,307.80
Outside Work
4,618.72
Production Expenses
5,466.76
Total Cost of Production
93,176.47
GROSS PROFIT ON OPERATIONS
$ 54,725.78
Less: Expenses
Accounting
$ 300.00
Auto Expenses
3,208.34
Advertising
969.61
Charity
45.00
Claims
2,007.06
Depreciation
4,057.02
Freight
107.51
Heat, Light & Power
5,761.12
Interest
299.48
Insurance
2,405.35
Legal
1,423.95
Miscellaneous
1,959.64
Repairs
4,920.02
Rent
4,794.72
Taxes
2,692.30
Telephone
877.79
Water Rent
195.51
Bank Charges
87.08
Total Expenses
36,111.50
NET PROFIT ON OPERATIONS
$18,614.28
*155 It also indicated that the distributive shares to each partner were as follows: Harry L. Burka
$6,204.79
Dora Burka
6,204.80
Samuel Burka
6,204.79
During the year 1944 the business conducted by the Blue Banner Laundry Company grew rapidly because of the war, and as a result, the books and records of that company were not complete or accurate. The larger bills of the Blue Banner Laundry Company, during the year 1944, were paid by check. The smaller bills for supplies that were needed in a hurry, for gas and oil for the trucks and for small claims for lost laundry, were paid in cash by Samuel Burka, his father or his mother or whoever happened to be available at the time. Some of these items which were paid for in cash were recorded on the sales sheets but not all of them, as the taking care of cash was a very careless operation. The sales sheets were prepared by six or seven different employees since the labor turnover during that year was high. Nathan Wechsler, a lawyer and certified public accountant, was employed to straighten out the records of the Blue Banner Laundry Company. At the time of his employment the bank books, canceled checks, and sales books *156 were turned over to him, all of which he returned to the company after he had completed his examination. The Trial Balance, dated October 31, 1944, showed "Unrecorded expense" in the amount of $12,463.93. The total recorded sales that went through the bank account during the period January 1, to October 31, 1944, were about $114,000. The total recorded expenses determined from an analysis of canceled checks which went through the bank account during the period January 1 to October 31, 1944, were $119,574.40. Sales as determined from the bank records, in the approximate amount of $114,000, were increased on the Trial Balance dated October 31, 1944, by $5,000. "Petty Cash" had not been properly recorded on the sales sheets during the first five months of the year 1944. The partners of the Blue Banner Laundry Company had paid out "Petty Cash" not reflected in bank withdrawals during that period of aproximately $1,000 per month or $5,000. Checks had been drawn on moneys deposited in the bank account in an amount of approximately an additional $5,000 over and above the amount of the recorded sales as shown above. Sales were further increased by this amount also. On December 30, 1944, another *157 "Trial Balance" was prepared which disclosed "Unrecorded expense" in the appropriate amount of $11,000. Wechsler concluded that he would reverse this item in part, by debiting "sales" and crediting "Unrecorded expense" in the amount of $5,000. Wechsler's explanation of why he made the entry on the books of the Blue Banner Laundry Company as of December 31, 1944, debiting "sales" in the amount of $5,000 and crediting "Unrecorded expense," $5,000, was that when "we have to deal with Internal Revenue, we couldn't send them in as unrecorded expense." Wechsler assumed that the balance remaining in the "Unrecorded expense" account of approximately $7,300 represented claims expense, automobile expense, and supplies. He then made a journal entry on the books of the Blue Banner Laundry Company as of December 31, 1944, to eliminate the balance in the "Unrecorded expense" account, as shown on the Trial Balance dated October 31, 1944, as follows: Debit
Credit
Claims
$1,000.00
Auto Expense
2,000.00
Supplies
4,463.93
Unrecorded Expense
$7,463.93
The above sums of $1,000, $2,000, and $4,463.93, respectively, representing alleged claims paid, auto expenses and *158 supplies, which amounts did not go through the bank account and which were credited to "Unrecorded expense," were mere estimates on the part of Wechsler. There were no vouchers or listings of any kind to support the journal entries as set forth above. The journal entry called "Unrecorded disbursements" of $500 was entered on the books of the company on December 31, 1943, because the petty cash fund with which the company started had been consumed and no records in regard to the use thereof had been kept. The item identified as "Rug Account" in the amount of $595.81 represented checks issued at the time the partners started a rug department in the Blue Banner Laundry Company. In his audit reports to the respective petitioners, respondent stated: "The taxpayer's accountant, Mr. Nathan Wechsler, CPA, states that entries were made to close out a debit balance in Unrecorded Exp. (Unaccountable Disb.) of $12,463.93. Said balance represented items of disbursement which could not be classified or identified. (Disbursements had been recorded from bank stayements. [sic]. The above entries were obviously made on an arbitrary basis, and could have included withdrawals by the partners *159 as well as non-deductible items. "Amended Form 1065 has been prepared for the Blue Banner Laundry. This return shows Net Profit increase from $18,614.28 to $31,123.21. Increase is the result of disallowance of the above $12,463.93 plus $45.00 listed as contributions." Opinion The failure to produce petitioners' books and vouchers or even the accountant's worksheets leaves the record in the position that the best evidence from which the necessary inferences could be drawn is unavailable. This failure is not satisfactorily explained. Under those circumstances all doubts must be resolved most heavily against the party having custody of the evidence, particularly when that accords with the burden of proof. , affirmed (C.C.A., 10th Cir.), . We cannot say from the record that petitioners' gross income was overstated, as was held in ; and certainly the rule of , has no application on these facts. We may assume that petitioners expended some amounts for the items in controversy. That, *160 of course, is the first requisite for application of the Cohan principle. But if we disallow the deductions claimed, there will still be charges of some $16,000 for supplies, $1,200 for auto expense, and $1,000 for the payment of claims, of which petitioners are being given the benefit. Increases in these three items to the figures deducted on the return would sustain petitioners' position. But there is absolutely no evidence upon which we may do so in the face of the presumption of correctness of respondent's action, particularly if we bear heavily against petitioners as the Cohan case admonishes us. For lack of evidence, Decisions will be entered for the respondent.